UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| ELILE ADAMS, | NO. _____ |
| Plaintiff, | **COMPLAINT** |
| v. | **Jury Demanded** |
| WHATCOM COUNTY, a municipal corporation; BILL ELFO, Whatcom County Sheriff, in his personal capacity; WENDY JONES, Whatcom County Chief of Corrections, in her personal capacity; and JOHN DOES 1-10, in their personal capacities, | |
| Defendants. | |

Plaintiff, by and through her attorneys of record, alleges and claims as follows upon personal knowledge as to herself as to her own actions, and upon information and belief upon all other matters:

## I.     PARTIES

2.     Plaintiff Elile Adams is a 33-year-old woman and Lummi Nation member who resides on off-reservation trust lands at 7098 #4, Mission Road, Everson, Washington.  She is not an enrolled member of the Nooksack Indian Tribe.

GALANDA BROADMAN, PLLC
8606 35th Avenue, NE, Ste. L1
Mailing: P.O. Box 15146
Seattle, Washington 98115
(206) 557-7509

3.      Defendant Whatcom County is a municipal corporation and a political subdivision of the State of Washington.  Whatcom County has various departments including, but not limited to, the Whatcom County Sheriff's Office and its Bureau of Custody and Corrections Services, which operates the jail.  Whatcom County is, and was at all times mentioned herein, responsible for the actions or inactions, and the policies, procedures, and practices/customs of all correctional health services relating to the Whatcom County Jail ("Jail" or "County Jail").  As a local government, Whatcom County is a "person" under 42 U.S.C. § 1983 and may be sued for constitutional injuries.  *Monell v. New York City Dept. of Social Servs.*, 436 U.S. 658, 694 (1978).

4.      Wendy Jones is the Whatcom County Chief of Corrections.  In that position, Ms. Jones is responsible for administration and operations oversight for Whatcom County Corrections Bureau, which includes the downtown Jail, the Work Center, and all of the jail-alternative programs that the County runs.  Ms. Jones also writes the County Corrections Bureau's budget and works with lieutenants to maintain monetary oversights, approve policies and procedures, and supervise hiring and discipline for all County Corrections Bureau employees.  Ms. Jones runs the day-to-day operations of the Jail and oversees everyone in the County Corrections Bureau.

5.      Sheriff Bill Elfo oversees law enforcement for all of Whatcom County.  He also oversees, generally, the County Corrections Bureau, which operates the Jail and the Jail system, as well as all the jail alternative programs that the County has.  Sheriff Elfo makes the final decisions for the County on hiring, appointments of personnel, budget requisitions, ratification, and policies.  He is ultimately responsible for the operations of the Jail and the detention and imprisonment of persons convicted or suspected of convicting a crime.  RCW 36.28.010.

6.      Defendants JOHN DOES 1 - 10 are subcontractors, employees, and/or agents of Whatcom County.  Each JOHN DOE 1 - 10 was within the scope of his/her employment at all

COMPLAINT - 2

GALANDA BROADMAN, PLLC
8606 35th Avenue, NE, Ste. L1
Mailing: P.O. Box 15146
Seattle, Washington 98115
(206) 557-7509

times relevant hereto.  Each JOHN DOES 1 - 10 was negligent; acted in furtherance of an official and/or *de facto* policy or procedure of negligence; and/or were responsible for the promulgation of the policies and procedures and permitted the customs/practices pursuant to which the acts alleged herein were committed.  Their identities are unknown at this time and will be named as discovery progresses.

7.     Each and every Defendant was personally involved in Elile's constitutional deprivations in that they: (1) participated directly in the alleged constitutional violation; (2) after being informed of the violation through a report or appeal, failed to remedy the wrong; (3) created a policy or custom under which unconstitutional practices occurred, allowed the continuance of such a policy or custom, or ratified the acts of subordinates thereby establishing a policy or custom; (4) was grossly negligent in supervising subordinates who committed the wrongful acts; and/or (5) exhibited deliberate indifference to Elile's rights by failing to act on information indicating that unconstitutional acts were occurring.

## II.     JURISDICTION AND VENUE

8.     This Court has jurisdiction pursuant to 28 U.S.C. § 1331.

9.     Venue is proper in the Western District of Washington pursuant to 28 U.S.C. § 1391 because Defendants are situated in this judicial district and because a substantial portion of the events and omissions giving rise to this claim occurred in Whatcom County, Washington, within the Western District of Washington.

## III.     STATEMENT OF FACTS

### A.     "JUDGE" RAYMOND DODGE AND THE NOOKSACK TRIBAL "JUSTICE SYSTEM"

10.     Since at least 2016, George Adams—Plaintiff's father—has been a "staunch defender" of, and traditional spokesperson for, over three hundred Nooksack tribal members who

GALANDA BROADMAN, PLLC
8606 35th Avenue, NE, Ste. L1
Mailing: P.O. Box 15146
Seattle, Washington 98115
(206) 557-7509

have been proposed for disenrollment from the Nooksack Indian Tribe ("Tribe") since 2012—the so-called Nooksack 306.[1]

11.     Plaintiff Elile Adams has also been a vocal supporter of the Nooksack 306 and critic of purported Nooksack Tribal officials who have oppressed them.

12.     On March 28, 2016, a group of Tribal members purporting to be governing body of the Nooksack Indian Tribe ("holdover Councilpersons") terminated Nooksack Tribal Court Chief Judge Susan Alexander, after she issued several election rulings adverse to them.

13.     On June 13, 2016, the holdover Councilpersons purportedly replaced Nooksack Tribal Court Chief Judge Susan Alexander with Raymond Dodge, the Tribe's immediate past in-house attorney, who had unsuccessfully represented them in the election proceedings of concern before Judge Alexander. *Nooksack Indian Tribe v. Zinke*, No. 17-0219-JCC (W.D. Wash.), Dkt. No. 43, at 3.[2]

14.     On October 17, 2016, Lawrence S. Roberts, United States Department of the Interior ("DOI") Principal Deputy Assistant Secretary of Indian Affairs ("PDAS"), issued a decision to the holdover Councilpersons establishing that they lacked authority to act as or in any way represent themselves as the governing body of the Tribe, and refusing to recognize "any actions taken" by them since March 24, 2016.

15.     PDAS Roberts issued a second decision to the holdover Councilpersons on November 14, 2016, reiterating that the United States "will only recognize those actions taken by the Tribal Council prior to March 24, 2016, when a quorum existed, and will not recognize any actions taken since that time because of a lack of quorum."  Such actions included the holdover

---

[1] *Disenrollment Kills Nooksack Language Revitalization Program*, INDIAN COUNTRY TODAY (June 29, 2016), *available at* https://newsmaven.io/indiancountrytoday/archive/disenrollment-kills-nooksack-language-revitalization-program-v_gOUFPP7Umtnq7Z77UxtA/.   George Adams is a respected Nooksack Tribal Elder and the last remaining speaker of the Nooksack language, Lhéchelesem.
[2] Additional facts giving rise to this lawsuit have been chronicled by the U.S. District Court for the Western District of Washington in *Nooksack Indian Tribe v. Zinke*, No. 17-0219-JCC (W.D. Wash.), Dkt. # 43.

COMPLAINT - 4

Councilpersons' purported appointment of Mr. Dodge as Tribal Court Chief Judge on June 13, 2016.

16.     On November 9, 2016, George Adams appeared in Nooksack Tribal Court before Mr. Dodge, as a traditional spokesperson for Nooksack Tribal Elder Margretty Rabang, who was unlawfully facing eviction pursuant to orders issued by Mr. Dodge and whose lawyers of record were disbarred and excluded from court by Mr. Dodge (when he was acting as both lawyer and purported judge).

17.     George Adams humiliated Mr. Dodge for his unethical behavior; he spoke exclusively in his Lhéchelesem tongue. It was at that point when Mr. Dodge, masquerading as Tribal Court Chief Judge, established his vendetta against the George and Elile Adams ("Adamses" collectively).

18.     On December 23, 2016, PDAS Roberts issued a third decision to the holdover Council, invalidating any Tribal Court orders "based on actions taken by the Tribal Council after March 24, 2016," whether those orders were "issued to be served by the Nooksack Chief of Police or could be issued and served in the near future."

19.     On April 27, 2017, counsel for Plaintiff emailed Whatcom County Sheriff Bill Elfo "ask[ing] that [his] agency reject any request from purported Nooksack officials to arrest or detain our clients."  That same day Sheriff Elfo admitted to his staff: "there has been a change of leadership in the [Nooksack] Police Department that is of concern. We will ensure that we provide advice to our deputies and not immerse ourselves in these matters."  The Sheriff replied to Mr. Galanda the next day: "Thank you Mr. Galanda, we have advised our deputies accordingly."

20.     As of April 10, 2018, the Washington State Bar Association commented that the Nooksack "'justice system,'" inclusive of its Tribal Court and Tribal Police, is "probably not worthy of that description." *Grievance of Gabriel S. Galanda against Connie Sue M. Martin*,

GALANDA BROADMAN, PLLC
8606 35th Avenue, NE, Ste. L1
Mailing: P.O. Box 15146
Seattle, Washington 98115
(206) 557-7509

1   ODC File No. 17-01776 (Wash. St. Bar. Assoc.).

2   21.   On June 11, 2018, DOI PDAS John Tahsuda expressed the United States'

3   continued concern about the need for "respect for the rule of law" at Nooksack.

4   **C.   WHATCOM COUNTY AND RAYMOND DODGE'S "TRIBAL COURT" PROCEEDINGS**

5   22.   In 2014, the father of Plaintiff Elile Adams' daughter, Manuel Galindo, initiated a

6   parenting action against Ms. Adams in Whatcom County Superior Court. *In re Z. A.-G.*, No. 14-

7   5-00085-2. By May 8, 2015, the Superior Court issued an Order, ruling that "Ms. Adams is, and

8   shall remain, [the] primary residential parent" for the child and awarding Mr. Galindo three

9   hours of visitation three times per week ("Superior Court Parenting Order"). Ms. Adams and

10  Mr. Galindo generally adhered to the Superior Court Parenting Order, until March of 2017.

11  23.   On March 17, 2017, Plaintiff sought a protection order against Mr. Galindo from

12  the Tribal Court. *Adams v. Galindo*, No. 2016-CI-PO-00. Mr. Galindo had a history of

13  physically and verbally abusing Ms. Adams, causing property damage to their former home

14  together, expressing suicidal ideation, and threatening to take their child back to Mexico with

15  him. That day, Raymond Dodge ostensibly presided, and issued a temporary protection order

16  against Mr. Galindo, as Nooksack Tribal Court Chief Judge.

17  24.   On March 30, 2017, Mr. Dodge himself initiated a parenting action *against* Ms.

18  Adams *sua sponte*, despite knowing that he lacked any authority to act as Tribal Court Chief

19  Judge according to PDAS Roberts' three determinations. *In re the Matter of Z. A.-G.*, No. 2017-

20  CI-PP-001. That day, Ms. Adams filed the Superior Court Parenting Order with the Tribal

21  Court, which would have caused a legitimate judge to realize he lacks jurisdiction per the

22  common law first-to-file rule. In fact, Mr. Dodge was advised in open court that he lacked

23  jurisdiction to adjudicate the custody or parenting of the minor child, due to the pre-existing

24  Superior Court Parenting Order. Mr. Dodge proceeded anyway, preparing and issuing a

25  purported Order titled, "Parenting Plan, Visitation Schedule." Mr. Dodge is of the false

COMPLAINT - 6

GALANDA BROADMAN, PLLC
8606 35th Avenue, NE, Ste. L1
Mailing: P.O. Box 15146
Seattle, Washington 98115
(206) 557-7509

1   "opinion that the Court possessed the authority to modify a Whatcom County Superior Court

2   order involving custody matters pertaining to minor child Z. A-G."

3       25.     Since March 30, 2017, Ms. Adams appeared before Mr. Dodge in either *In re the*

4   *Matter of Z. A.-G.*, No. 2017-CI-PP-001, or its related criminal matter, *infra*—by which Mr.

5   Dodge has endlessly harassed Ms. Adams through an abuse of judicial process at least 18 times

6   as of July 30, 2019.  She appeared before him on March 30, November 8, December 13, 2017,

7   January 10, February 14, March 14, April 11, May 9, June 13, August 8, October 10, November

8   14, December 19, 2018, and January 9 and 30, March 6 and 14, and May 20, 2019.

9       26.     Between March 30, 2017, and July 31, 2019, Mr. Dodge issued no less than

10  twenty purported Orders *against* Ms. Adams in *In re the Matter of Z. A.-G.*, No. 2017-CI-PP-

11  001, many "*sua sponte*" and many for contempt of court.

12      27.     On February 20, 2019, Ms. Adams was cited with "TEN COUNTS" of custodial

13  interference, at Mr. Dodge's behest in *Nooksack Indian Tribe v. Elile Adams*, No. 2019-CR-A-

14  004.

15      28.     On March 14, 2019, Ms. Adams appeared before Mr. Dodge in *Nooksack Indian*

16  *Tribe v. Elile Adams*, No. 2019-CR-A-004, and pleaded not guilty to all of the criminal counts.

17  Mr. Dodge assigned Ms. Adams a public defender, Matthew Deming, in *Nooksack Indian Tribe*

18  *v. Elile Adams*.  That matter was scheduled for some form of pre-trial hearing on May 20, 2019.

19  Despite the pre-existence of the civil parenting matter that he initiated against Ms. Adams, *In re*

20  *the Matter of Z. A.-G.*, No. 2017-CI-PP-001, Mr. Dodge failed to recuse himself from the

21  criminal matter that he also initiated against her, *Nooksack Indian Tribe v. Elile Adams*, until

22  October 10, 2019, in violation of fundamental judicial appearance of fairness tenets.

23      29.     On April 9, 2019, Ms. Adams obtained citizenship with the Lummi Nation for

24  herself and her minor child, after relinquishing each of their enrollments with the Nooksack

25  Tribe on January 31, 2019.  In her own words, she "was seeking asylum in the Lummi Nation"

COMPLAINT - 7

1   as a result of persecution from Mr. Dodge.  At this time Ms. Adams was no longer a member of

2   the Nooksack Indian Tribe.

3       30.     On May 14, 2019, Ms. Adams filed a "Voluntary Non Suit of Elile Adams" with

4   the Tribal Court in *In re the Matter of Z. A.-G.*, No. 2017-CI-PP-001, submitting that: "During

5   the time when I filed my original petition asking for [a protection order] the Nooksack Tribal

6   Court was and is now nonfunctional.  This Tribal Court has neither subject matter jurisdiction,

7   nor personal jurisdiction over me, nor over Mr. Galindo, nor our child."

8       31.     On May 20, 2019, Ms. Adams appeared before Mr. Dodge for some form of pre-

9   trial hearing in *Nooksack Indian Tribe v. Elile Adams*, No. 2019-CR-A-004, but Mr.  Dodge

10  continued the hearing again until July 11, 2019.

11      32.     On July 11, 2019, Mr. Deming appeared before Mr. Dodge for some form of pre-

12  trial hearing in *Nooksack Indian Tribe v. Elile Adams*, No. 2019-CR-A-004, on Ms. Adams'

13  behalf.   That day Ms. Adams was on Bainbridge Island with her father, taking part in

14  preparations for the Northwest Tribes' annual Canoe Journey.   Ms. Adams and her father

15  paddled a newly carved cedar canoe along the Puget Sound for miles and miles during Canoe

16  Journey.

17      33.     On July 19, 2019, Mr. Dodge prepared, signed, and issued a Warrant of Arrest

18  against Ms. Adams in *Nooksack Indian Tribe v. Elile Adams*, No. 2019-CR-A-004, describing

19  the underlying charges as "Interference w/ custody x4/contempt x1" and listing a "Reason or

20  Issuance of Warrant: FTA [Failure to Appear]."   Mr. Dodge issued the arrest warrant even

21  though Mr. Deming appeared for Ms. Adams in *Nooksack Indian Tribe v. Elile Adams* on July

22  11, 2019.

23      34.     From July 24, 2019 to July 28, 2019, Nooksack Tribal Police, working in concert

24  with Mr. Dodge saw the Adamses attend the final Canoe Journey Landing and Protocol

25  ceremonies on the Lummi Reservation.

COMPLAINT - 8

GALANDA BROADMAN, PLLC
8606 35th Avenue, NE, Ste. L1
Mailing: P.O. Box 15146
Seattle, Washington 98115
(206) 557-7509

35.     On July 29, 2019, the Adamses returned home, exhausted from Canoe Journey.

36.     On the morning of July 30, 2019, the Adamses were asleep or relaxing at home when Tribal Police officers arrived to the Adamses' home and assaulted, battered and falsely detained, arrested and/or imprisoned them, as detailed below.  Prior to the Tribal Police officers' arrival that morning, they worked with County or Jail personnel to secure a spot in the Jail for Ms. Adams to be jailed upon her arrest that day.

37.     On the afternoon of July 30, 2019, by 2:15 PM, Mr. Dodge denied Ms. Adams' "Voluntary Non Suit of Elile Adams" in *Nooksack Indian Tribe v. Elile Adams*, No. 2019-CR-A-004.  Mr. Dodge did so admitting: "On this date a warrant for Ms. Adams [sic] arrest in a pending criminal matter was executed.  Ms. Adams is currently in custody."

38.     On July 31, 2019, Mr. Dodge issued a Criminal Summons prepared by the Tribe's Office of Tribal Attorney, to Ms. Adams, in *Nooksack Indian Tribe v. Elile Adams*, No. 2019-CR-A-004.  Mr. Dodge ordered her initial appearance at a hearing before the Tribal Court on August 8, 2019 at 9:30 a.m.

39.     On August 6, 2019, Mr. Dodge continued the initial hearing in *Nooksack Indian Tribe v. Elile Adams*, No. 2019-CR-A-004, until September 12, 2019 at 9:30 a.m.

40.     On August 7, 2019, Mr. Dodge caused an appearance notice filed by Ms. Adams' counsel, Gabriel S. Galanda, in *In re the Matter of Z. A.-G.*, No. 2017-CI-PP-001, to be "REJECTED" by the Nooksack Tribal Court, thereby denying Ms. Adams her right to counsel.

41.     On September 12, 2019 at 9:30 a.m., Plaintiff appeared before Mr. Dodge for the initial hearing in *Nooksack Indian Tribe v. Elile Adams*, No. 2019-CR-A-004.  Mr. Dodge closed the Courthouse to the public, in violation of Plaintiff's right to a public trial.

42.     On October 15, 2019, Mr. Dodge also caused an appearance notice filed by Mr. Galanda, in *Nooksack Indian Tribe v. Elile Adams*, No. 2019-CR-A-004, to be "REJECTED" by the Nooksack Tribal Court, thereby further denying Ms. Adams her right to counsel.

COMPLAINT - 9

**GALANDA BROADMAN, PLLC**
8606 35th Avenue, NE, Ste. L1
Mailing: P.O. Box 15146
Seattle, Washington 98115
(206) 557-7509

43.     On October 17, 2019, the Superior Court issued an Order in its proceeding, *In re Z. A.-G.*, No. 14-5-00085-2, finding that "this Court has never declined jurisdiction" and that Mr. Galindo and Ms. Adams' "appearance and participation in the Nooksack Tribal Court custody proceedings [in *In re the Matter of Z. A.-G.*, No. 2017-CI-PP-001] does not waive or divest this Court of its continuing and exclusive jurisdiction."  The Superior Court "DECLARED that this Court retains exclusive, continuing jurisdiction over the custody of [Z. A.-G.] . . ."

44.     In other words, Mr. Dodge never had civil or criminal jurisdiction pertaining to the custody of Ms. Adams' child; he never has jurisdiction to cause Ms. Adams' arrest.

**D.     THE EVENTS OF JULY 30, 2019**

45.     At or about 10:00 AM on July 30, 2019, three Nooksack Tribal Police officers, Sergeant Francisco Sanchez and Deputies Daniel Bennett and Brandon Farstad, arrived to the Adamses' home.  The Adamses were all asleep or relaxing at home in their pajamas, having returned from Canoe Journey the day prior.  George Adams opened the front door a few inches and saw the Tribal Police standing on his porch.  Officer Sanchez said, "Is Elile here?  We have a warrant for her arrest."

46.     At no time on July 30, 2019 did the Tribal Police ever present the Tribal Court Warrant to either George Adams or Elile Adams.

47.     George Adams advised the Tribal Police that he was going to call the Whatcom County Sheriff's Office because both Ms. Adams and her daughter are enrolled Lummi Nation citizens, not Nooksack Tribal members.  George Adams further advised them he needed to get Mr. Galanda on the phone, whom he proceeded to call.

48.     After the Adamses phoned Mr. Galanda from George Adams' cell phone, George Adams stepped out his front door with Mr. Galanda on speaker phone.  While George Adams had still been inside, the Tribal Police had walked away from his front door towards the edge of the Adamses' driveway.

COMPLAINT - 10

GALANDA BROADMAN, PLLC
8606 35th Avenue, NE, Ste. L1
Mailing: P.O. Box 15146
Seattle, Washington 98115
(206) 557-7509

49.     George Adams calmly proceeded towards the Tribal Police asking, "Who is the highest ranking officer?" Sergeant Sanchez identified himself as "Sergeant Sanchez." Mr. Galanda asked him to identify himself by full name and badge number. Sergeant Sanchez refused.

50.     Mr. Galanda indicated he would begin to record their conversation, which he did. According to a four-minute, thirty-second audio recording:

| | |
|---|---|
| Mr. Galanda: | Can you still hear me? |
| George Adams: | Yeah. |
| Mr. Galanda: | Alright I'll just record it on my end. |
| George Adams: | Okay. |
| Mr. Galanda: | Sgt. Sanchez, can you please give me your name and badge number? |
| (indiscernible - radio noise) | |
| Mr. Galanda: | Sgt. Sanchez, are you there? |
| (indiscernible - radio noise) | |
| Mr. Galanda: | Sgt. Sanchez, this is Gabriel Galanda, I represent Elile Adams. Can please identify yourself by name and badge number? |
| (indiscernible - radio noise) | |
| Mr. Galanda: | Can you hear me? |
| Sergeant Sanchez: | I'm here. We're not going to be talking with ya. We're not. We're not speaking with you. In fact, George, right now, because you refuse to let us go to the house, and you know she's in the house, we're placing you under arrest for obstruction, okay? |
| Mr. Adams: | Okay . . . |
| Mr. Galanda: | Let me, let me advise you of a few things |
| (indiscernible/yelling) | |
| Mr. Adams: | Okay. . . don't touch . . . (indiscernible) |
| Sergeant Sanchez: | George, listen George |
| Mr. Galanda: | You have no lawful authority to put your hands on him. |
| Sergeant Sanchez: | Relax. |
| Mr. Galanda: | You have no lawful authority to put your hands on him. |
| (indiscernible) | |
| George Adams: | Leave my phone alone! |
| Mr. Galanda: | This is being recorded. |
| (indiscernible) | |
| Mr. Galanda: | Please be advised you have no lawful authority under Nooksack law to issue any warrant or cause any arrest. |
| (indiscernible) | |
| Mr. Adams: | Hey, get your hands off my phone . . . Hey . . . |
| Officer Bennett: | George, relax. |
| (indiscernible) | |
| George Adams: | . . . my phone (indiscernible yelling) |
| Officer Bennett: | Put your hands behind your back |

COMPLAINT - 11

GALANDA BROADMAN, PLLC
8606 35th Avenue, NE, Ste. L1
Mailing: P.O. Box 15146
Seattle, Washington 98115
(206) 557-7509

(indiscernible yelling)
Officer Bennett:   Relax, George.
George Adams:     Hey!
Mr. Galanda:         Please be advised you have no lawful authority to cause any arrest or search of this home.  This is all being recorded, George.
Officer Bennett:   Relax, relax.
Mr. Galanda:         This is all being recorded, George
Officer Bennett:   Relax.
George Adams:     Hey!
Officer Bennett:   Relax.
Mr. Galanda:         You have no lawful authority.  Any warrant has been issued without lawful authority.  This arrest is being caused without lawful authority.
(indiscernible)
Mr. Galanda:         Sgt. Sanchez, are you there?
(static)
(indiscernible yelling)
George Adams: Hey
(static)

51.    Mr. Galanda emailed Sheriff Elfo a copy of the audio recording "in real time" that same day.

52.    At the moment when Mr. Galanda said, "Sgt. Sanchez, this is Gabriel Galanda, I represent Elile Adams.  Can please identify yourself by name and badge number?" Officer Bennett, who had been on his cell phone with another officer, rushed up to where Sergeant Sanchez and George Adams were conversing.

53.    While rushing towards Sergeant Sanchez and George Adams, Officer Bennett frantically waived his arms from side to side as if to say, "No, this is not happening."  Officer Bennett told Sergeant Sanchez, "Don't say a word."

54.    Officer Bennett hit a button on his body camera at that time, to either activate or de-activate the device.

55.    Then when Mr. Galanda asked Sergeant Sanchez, "Can you hear me?", the three Tribal Police officers each grabbed George Adams by his arms.

56.    Officer Bennett slapped George Adams' phone out of his hand to distract him before kneeing him in the groin with a karate-like move.  Sergeant Sanchez and Officers Bennett

GALANDA BROADMAN, PLLC
8606 35th Avenue, NE, Ste. L1
Mailing: P.O. Box 15146
Seattle, Washington 98115
(206) 557-7509

1   and Farstad threw him against a concrete sidewalk and stairway, causing bleeding to his hand

2   and contusions to his legs.   Officer Farstad placed him in a chokehold for in upwards of a

3   minute.   Sergeant Sanchez and Officers Bennett and Farstad violently rotated his torso and

4   handcuffed his hands behind his back, spraining the toes in his left foot.   They destroyed his

5   prescription eye-glasses:



57.    The Tribal Police confiscated George Adams' phone and Officer Farstad detained

him in the back of a hot patrol car without cracking the widow for over thirty minutes before

citing him for "Obstructing a Public Official" and "Resisting Arrest."

58.    At 10:09 a.m., Mr. Galanda emailed Sheriff Elfo:

> I just hung up a recorded call with Nooksack Sgt. Sanchez who is in the process
> of unlawfully arresting George Adams purportedly for obstruction of justice
> because he put me on a speakerphone to inquire about a Nooksack Tribal Court
> warrant that Sgt. Sanchez was attempting to serve upon his daughter and his
> home.  Sgt. Sanchez would not identify himself or his fellow officers by full name
> or badge number. PLEASE BE ADVISED THAT ANY ARREST BY
> NOOKSACK POLICE OR ANY ENTRY INTO THE HOME IS BEING
> CONDUCTED WITHOUT LAWFUL AUTHORITY.

COMPLAINT - 13

59.     By 10:30 a.m., Officer Bennett had entered the Adamses' home to arrest Ms. Adams.  Officer Bennett walked upstairs unannounced, passing Ms. Adams' child who was sitting on the couch watching Disney cartoons.  Ms. Adams told the officer from atop the staircase, "You're not supposed to be here.  You don't have my consent to be here."

60.     Officer Bennett ignored her statements and told her she was under arrest.

61.     Ms. Adams then gave her child a hug and a kiss and went outside, where she was frisked and arrested by Officer Farstad.  Officer Farstad handcuffed her arms behind her back and confiscated her cell phone, too.

62.     The Tribal Police refused to speak to Mr. Galanda or allow Mr. Galanda to speak to Mr. or Ms. Adams.

63.     At 10:23 a.m., Mr. Galanda again emailed Sheriff Elfo:

> Please be advised that any purported arrest of George or Elile Adams by Nooksack police, pursuant to some form of warrant issued by purported Judge Ray Dodge or relates arrest, is unlawful.  Neither Dodge nor Nooksack police officers possess lawful authority to affect any arrest or search upon the Adamses.  Whatcom County should refuse to accept custody of George or Elile Adams.  Please advise.

64.     The Sheriff, in other words, was explicitly warned that he lacked jurisdiction to detain Ms. Adams and that any tribal court warrant had been issued without probable cause.

65.     At 11:05 a.m., Sheriff Elfo was advised by Whatcom County Deputy Prosecuting Attorney George Roche, in reference to Mr. Galanda's emails to Sheriff Elfo that morning: "Mr. Galanda is arguing that Nooksack arrested some people unlawfully . . . My intuition tells me this is an issue for Mr. Galanda and the Nooksack Tribe to work out amongst themselves."

66.     The Sheriff and Whatcom County blithely looked away.

67.     Sargent Sanchez transported Ms. Adams to the County Jail, where she was booked into custody at 11:12 a.m. "for contempt of court/failure to appear" before the Tribal Court in *Nooksack Indian Tribe v. Elile Adams*, No. 2019-CR-A-004.

COMPLAINT - 14

68.     Sargent Sanchez lacked jurisdiction to detain or transport Ms. Adams beyond Nooksack trust lands.  *State v. Eriksen*, 172 Wn.2d. 506, 509, 25 P.3d 1079 (2011).

69.     Any alleged tribal court warrant was not domesticated through proper procedures in Whatcom County or elsewhere in Washington State.  The warrant was not therefore not enforceable by Whatcom County or any of its officers.

70.     Because Sargent Sanchez lacked jurisdiction to detain or transport Ms. Adams beyond Nooksack trust lands, Whatcom County also lacked jurisdiction to detain or incarcerate her.  Whatcom County does not have the power "to assume general criminal jurisdiction simply because it is the nearest police authority.  Venues to extended jurisdiction must come from the legislature, not from the courts and not from the fiat of county governments."  *Ross v. Neff*, 905 F.2d 1349, 1353 (10th Cir. 1990).

71.     It is clearly established that an arrest "outside the arresting officer's jurisdiction is presumptively unreasonable and therefore a violation of the Fourth Amendment."  *Madsen v. Park City*, 6 F. Supp. 2d 938, 945 (N.D. Ill. 1998).  "The concept of reasonableness embodied in the Fourth Amendment logically presupposes an exercise of lawful authority by a police officer.  When a law enforcement official acts beyond his or her jurisdiction, the resulting deprivation of liberty is just as unreasonable as an arrest without probable cause."  *United States v. Foster*, 566 F. Supp. 1403, 1412 (D.D.C. 1983).

72.     Ms. Adams was incarcerated at the Whatcom County Jail for nearly eight hours in knowing violation of her Fourth Amendment right to be free from unreasonable seizures.  *Ross*, 905 F.2d at 1354; *Cole v. Nebraska State Bd. of Parole*, 997 F.2d 442, 444 (8th Cir. 1993); *Foster*, 566 F.Supp. at 1411-12.

73.     Whatcom County's own training materials make clear that though "Tribal courts will issue arrest warrants for fugitives[, t]hese warrants are not enforceable by state officers."  This is clearly established.  *See, e.g.,* Arizona Attorney General Opinion 188-131, 1988 Ariz. Op.

COMPLAINT - 15

GALANDA BROADMAN, PLLC
8606 35th Avenue, NE, Ste. L1
Mailing: P.O. Box 15146
Seattle, Washington 98115
(206) 557-7509

1    Atty. Gen. 177, 1988 WL 249704 (Dec. 30, 1988); Wisconsin Attorney General Opinion 10-81,

2    70 Wis. Op. Atty. Gen. 36, 1981 WL 157222 (Mar. 11, 1981); 1995 Idaho Op. Att'y Gen. 31,

3    1995 WL 607633 (Oct. 1995).

4        74.    Upon being brought to the County Jail, Ms. Adams was placed in an isolation cell

5    for nearly two hours, with her arms handcuffed behind her back. She was experiencing carpal

6    tunnel syndrome pain and numbness due to being handcuffed for such a long period of time.  Her

7    arms and fingers went numb.  She felt burning sensations of pain.

8        75.    When Ms. Adams was then booked into the County Jail, Whatcom County

9    Sheriff's Deputy David Kimball commented: "This is a bogus charge."

10       76.    Deputy Kimball took off her handcuffs, noting that the Tribal Police had placed

11   the handcuffs on her upside down.

12       77.    Deputy Kimball took her mug shot and confiscated her belongings. He then

13   escorted her to the County Jail, where she was placed in cellblock "3K" with the general inmate

14   population.  Twenty other women were in the same cell, which reeked of urine.  She cried.

15       78.    Ms. Adams was incarcerated at the County Jail for nearly eight hours. County Jail

16   personnel released her after George Adams posted $500.00 bail for her, after 7:57 p.m., ordering

17   her to appear in Nooksack Tribal Court on August 21, 2019, at 11:00 a.m. in *Nooksack Indian*

18   *Tribe v. Elile Adams*, No. 2019-CR-A-004.

19                               **IV.    CLAIMS**

20   **A.    FIRST CAUSE OF ACTION – 42 U.S.C. § 1983 (*MONELL*) – WHATCOM COUNTY,
         POLICYMAKERS**

21

22       79.    The acts and failures to act described above were done under color of law and are

23   in violation of 42 U.S.C. § 1983, depriving Plaintiff of her civil rights.

24

25

COMPLAINT - 16

80.     At the time Ms. Adams was detained by the County, it was clearly established in the law that the Fourth and Fourteenth Amendments imposes a duty on jail officials to only detain inmates with adequate jurisdiction and upon probable cause.

81.     Defendants Whatcom County and its policymakers knew of and disregarded this right, which was caused by the their inadequate formal and informal policies, including a lack of training and supervision, as identified above.

82.     Defendants Whatcom County its policymakers knew of this constitutional violation because it was obvious and because numerous other inmates had their constitutional rights violated as a result of these inadequacies in the past.

83.     Indeed, even without the previous in-custody constitutional violations it was obvious that the above-identified policies and established practices would result in the harm caused here. Defendants Whatcom County and its policymakers were expressly informed that many of their official policies were being ignored and that their unofficial or *de facto* policies would result in constitutional violations, yet deliberately did nothing to address these unofficial or *de facto* policies.

84.     Indeed, Defendants Whatcom County and its policymakers had numerous opportunities to obtain training to appropriately address continued constitutional violations, but knowingly and deliberately declined to obtain it.

85.     This callousness reflects a custom, pattern, and/or policy wherein Defendants Whatcom County and its policymakers either intentionally violated or were deliberately indifferent to the civil rights of Ms. Adams and all similarly situated inmates.

86.     As a direct and proximate result of the deliberate indifference of Defendants Whatcom County and its policymakers, as described above and in other respects as well, Ms. Adams was unconstitutionally confined.  She suffered pain, anxiety, and terror in the period that she was wrongly incarcerated.

GALANDA BROADMAN, PLLC
8606 35th Avenue, NE, Ste. L1
Mailing: P.O. Box 15146
Seattle, Washington 98115
(206) 557-7509

87.     Defendants Whatcom County and its policymakers have shown reckless and careless disregard and indifference to inmates' constitutional rights, and are therefore subject to an award of punitive damages to deter such conduct in the future.  Plaintiff does not seek an award of punitive damages against Whatcom County itself, however.

**B.     SECOND CAUSE OF ACTION – 42 U.S.C. § 1983 – ALL INDIVIDUALLY NAMED DEFENDANTS, INCLUDING DEFENDANTS JOHN DOE 1-10.**

88.     The acts and failures to act described above were done under color of law and are in violation of 42 U.S.C. § 1983, depriving Plaintiff of her civil rights.

89.     Each individually-named Defendant was subjectively aware that Ms. Adams was being unlawfully detained and that her constitutional rights were being violated.

90.     Each individually-named Defendant displayed deliberate indifference when they continued to detain Ms. Adams, in contravention of her constitutional rights.

91.     As a direct and proximate result of the deliberate indifference of each individually-named Defendant, as described above and in other respects as well, Ms. Adams suffered pain, anxiety, and terror.

92.     Each individually-named Defendant has shown reckless and careless disregard and indifference to inmates' rights, and Defendants are therefore subject to an award of punitive damages to deter such conduct in the future.

### V.     AMENDMENTS

93.     Plaintiff further reserves the right to amend this Complaint as discovery proceeds.

### VI.     RELIEF REQUESTED

94.     Damages have been suffered by Plaintiff and to the extent any state law limitations on such damages are purposed to exist they are inconsistent with the compensatory, remedial and/or punitive purposes of 42 U.S.C. § 1983, and therefore any such alleged state law

COMPLAINT - 18

1   limitations must be disregarded in favor of permitting an award of the damages prayed for

2   herein.

3          95.     WHEREFORE, Plaintiff requests a judgment against all Defendants:

4          (a)     Fashioning an appropriate remedy and awarding general, special, and punitive

5   damages, including damages for pain, suffering, terror, loss of consortium, and loss of familial

6   relations, and loss of society and companionship under Washington State law and pursuant to 42

7   U.S.C. §§ 1983 and 1988, in an amount to be proven at trial;

8          (b)     Awarding reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988, or as

9   otherwise available under the law;

10         (c)     Declaring the Defendants jointly and severally liable;

11         (d)     Awarding any and all applicable interest on the judgment; and

12         (e)     Awarding such other and further relief as the Court deems just and proper.

13         Respectfully submitted this 31st day of October, 2019.

14                                          GALANDA BROADMAN, PLLC

15                                          s/ Gabriel S. Galanda
                                            _____
16                                          Gabriel S. Galanda, WSBA #30331
                                            s/ Ryan D. Dreveskracht
                                            _____
17                                          Ryan D. Dreveskracht, WSBA #42593
                                            Attorneys for Plaintiff
18                                          P.O. Box 15146, Seattle, WA 98115
                                            (206) 557-7509 Fax: (206) 299-7690
19                                          Email: gabe@galandabroadman.com
                                            Email: ryan@galandabroadman.com

20

21

22

23

24

25

COMPLAINT - 19